a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

RYAN GITTENS #A037-185-792,          CIVIL DOCKET NO. 1:25-CV-01457
Petitioner                                                    SEC P

VERSUS                                                JUDGE DRELL

DEPARTMENT OF HOMELAND          MAGISTRATE JUDGE PEREZ-MONTES
SECURITY,
Respondent

---

REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by pro se Petitioner Ryan Gittens ("Gittens"), an immigration detainee at Winn Correctional Center in Winnfield, Louisiana. Gittens challenges his continued detention.

Because Gittens's detention is unlawful, the Petition should be GRANTED.

I.    Background

Gittens is a native and citizen of Barbados who lawfully entered the United States.[1] On August 17, 2007, Gittens was convicted in the United States District Court for the District of Idaho of conspiracy to distribute a controlled substance. *Id.* Gittens was sentenced to 63 months of imprisonment. *Id.* According to the Bureau

---

[1] Gittens alleges that he was admitted into the United States as a lawful permanent resident in 1984. ECF No. 1 at 7. The Government asserts that Gittens was paroled into the United States on April 28, 2006. ECF No. 21-1 at 5.

1

of Prisons inmate locator service, Gittens was released from prison on September 6, 2011.[2]

Gittens was ordered removed on September 4, 2012, and his appeal was dismissed on February 8, 2013.  ECF No. 21-1 at 3.  The removal order became final that date.[3]

Gittens asserts that he was released on an order of supervision ("OSUP") in May 2013.  ECF No. 10-1 at 3; 21 at 2; 23 at 3.[4]

On June 4, 2013, Gittens renounced his Barbados citizenship.  ECF No. 21-2.

Gittens alleges that he became an emergency medical technician in 2014, and has maintained employment in that field for 11 years until he was re-detained on May 16, 2025.  ECF No. 21 at 2; ECF No. 10 at 4.  It is undisputed that Gittens complied with all requirements of supervision for 12 years and was re-detained without committing a violation.

II.    Law and Analysis

A.    The Court has jurisdiction to consider Gitten's challenge to detention.

The Court has jurisdiction to consider Gittens's challenge to his continued post-removal order detention.  *See Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at \*6 (S.D. Tex. Jan. 28, 2026) ("Mr. Nguyen contests only his post-removal-period detention . . . rather than any aspect of his underlying removal order or the decision

---

[2] https://www.bop.gov/inmateloc/

[3] Gittens filed a motion to reopen, which was recently denied. *See* https://acis.eoir.justice.gov

[4] The Government acknowledges that Gittens was released in 2013.  It does not provide a date or a copy of the Order of Supervision.

by DHS to execute it.  Thus, . . . the Court retains jurisdiction to review his detention."); *Kokoreva v. Unknown Party*, No. 3:25-CV-1700, 2025 WL 2981626, at *2 (N.D. Tex. Oct. 7, 2025) ("[T]he Court retains jurisdiction to review a noncitizen's detention insofar as that detention presents constitutional issues, such as those raised in a habeas petition.") (quotation omitted), *report and recommendation adopted*, 2025 WL 2980642 (N.D. Tex. Oct. 22, 2025); *Yousef v. Warden Richwood Corr. Ctr.*, No. 25-CV-1947, 2025 WL 3784489, at *2 (W.D. La. Dec. 10, 2025), *report and recommendation adopted*, 2026 WL 19378 (W.D. La. Jan. 2, 2026).

B.   <u>**Gittens's did not receive the process due when his supervision was revoked.**</u>

It is undisputed that Gittens was released on an OSUP, which has not been provided to the Court.  Generally, aliens subject to a final order of removal may be released on an OSUP after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.  *See* 8 C.F.R. § 241.13(a).

Once a noncitizen has been released from detention under an OSUP, it may be revoked: (1) if the noncitizen violates his conditions of release; (2) to carry out deportation; (3) if the purpose of release has been served; or (4) if the noncitizen's conduct or another circumstance indicates that release is no longer appropriate.  *See* 8 C.F.R. §§ 241.13(i), 241.4(l)(2).  The Government has not provided a copy of a Notice of Revocation of Release, so the reason for revocation is unknown.  Respondents have not argued that Gittens was re-detained because he violated conditions of release;

3

that the purpose of release has been served; or that release is no longer appropriate. So, if the OSUP was revoked, it was presumably to effectuate deportation.

If an OSUP is revoked for the purpose of effectuating deportation, ICE must show that "on account of changed circumstances, . . . there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). That is, to re-detain a formerly released alien, it is ICE's burden to show that the alien's removal from the country is significantly likely to occur in the reasonably foreseeable future. *See Garcia-Aleman v. Thompson*, No. 25-886, 2025 WL 3534806, at *4 (W.D. Tex. Nov. 24, 2025), *adopted*, 2025 WL 3532179 (W.D. Tex. Dec. 9, 2025) (collecting cases).

Gittens alleges that his OSUP was unlawfully revoked. Not only has the Government shown no reason for revoking the OSUP, but it has not even shown that the OSUP was revoked. The record contains no documents regarding Gittens's release or revocation. There being no documentation of the revocation of his release, who authorized it, or for what reason, the Government clearly fails to carry its burden to show that there was a significant likelihood of Gittens's removal justifying his re-detention. *See Rodriguez Romero v. Ladwig*, 25-CV-1106, 2026 WL 321437, at *7 (M.D. La. Feb. 6, 2026); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 699-700 (S.D. Tex. 2025) ("In the absence of some evidence showing that Villanueva's Order of Supervision was lawfully revoked by someone with the authority to do so and for a reason lawfully permitted, the government has failed to show that it afforded

4

[petitioner] with due process in connection with the purported revocation of his Order of Supervision.").

In addition to requiring a significant likelihood of removal to revoke an OSUP, ICE's regulations provide that a noncitizen being re-detained must be informed of the reason for revocation and afforded an "initial informal interview promptly after [his] return to Service custody to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241.13(i)(3). While the regulations do not give exact specifications for what constitutes an acceptable informal interview, the purpose stated in the regulations is clear: a detainee must have an opportunity to respond to and contest the reason for re-detention. *See Rodriguez Romero*, 2026 WL 321437, at *10. There is no evidence that Gittens received such an interview.

ICE's regulations—8 C.F.R. §§ 241.4, 241.13—mandate important procedural safeguards against wrongful detention. This conclusion is especially warranted considering the re-detention of a noncitizen following supervised release deprives them of personal liberty. *See id.* (citing *Villanueva*, 801 F. Supp. 3d at 704 ("[E]ven if the government has the discretion to revoke [Petitioners'] supervision, [their] constitutionally protected liberty interests are implicated by [their] re-detention.")). "The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Individuals who have been conditionally released from detention have a protected

interest in their "continued liberty." *Rodriguez Romero*, 2026 WL 321437, at *11 (quoting *Young v. Harper*, 520 U.S. 143, 147 (1997) (quotations omitted). This is true even when the released individual is subject to extensive conditions of release. *Id.* (citing *Villanueva*, 801 F. Supp. 3d at 704).

On the record before the Court, Gittens had a liberty interest in his OSUP, under which he was free for 12 years. It is undisputed that he maintained employment and complied with all conditions of release. ICE's failure to follow its own mandatory regulations (or otherwise afford Gittens any meaningful notice or opportunity to be heard) in revoking supervised release was *per se* prejudicial. *See id.*

### C. There is no significant likelihood of Gittens's removal in the reasonably foreseeable future.

After an alien is ordered removed, the Government has 90 days within which to effectuate the removal. *See* 8 U.S.C. § 1231(a)(1)(A). However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Additionally, § 1231 permits detention beyond 90 days, for a period reasonably necessary to bring about that alien's removal from the United States. *See Zadvydas*, 533 U.S. at 701.

Generally, detention for up to six months is "presumptively reasonable." *Id.* Afterward, if the alien "provides good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release him. *Id.; see also* 8 CFR § 241.13 (setting forth the *Zadvydas* procedures). The petitioner bears the initial burden of demonstrating that a likelihood of removal in the reasonably foreseeable future does not exist. *See Andrade v. Gonzales*, 459 F.3d 538 (5th Cir. 2006). The alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, No. 03-cv-1293, 2003 WL 21805198, *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)).

If the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing with evidence or release the alien. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018); *Zadvydas*, 533 U.S. at 701.

The Government argues that Gittens's removal period is extended under § 1231(a)(1)(C) "due to his failure to comply with his obligations to assist with his removal." ECF No. 21 at 5. It states that Gittens "refused to sign his I-229 (ECF No. 10-2 (#59)) and to date has not complied with his statutory obligations." *Id.* at 5-6. The document cited by the Government is a form that is not signed by Gittens. There is no evidence before the Court that Gittens refused to sign the form, or that his lack of signature somehow thwarted removal efforts. And although Gittens received a form Notice of Failure to Comply, that form also omits any explanation of how Gittens has failed to assist in his removal. ECF No. 10-2 at 21. Gittens alleges that he complied by seeking travel documents from England and Barbados. ECF No. 10-1 at

7

2.  There is no evidence to show that Gittens has thwarted his removal since he has been detained.[5]  Therefore, the removal period cannot be tolled.

The Government alleges that Barbados "initially agreed to accept Petitioner [on an unspecified date] in 2013." ECF No. 21 at 2.  But the exhibit cited (Exhibit B, ECF No. 21-2) is a copy of the Certificate of Renunciation. It does not indicate that Barbados agreed to accept Gittens.  *Id.*  The Government's claim is further belied by the undisputed fact that Gittens was released on supervision in May 2013.  ECF No. 10-1 at 3; 21 at 2; 23 at 3.[6]  If Barbados agreed to accept Gittens in 2013, it is unlikely that he would have been released.

Because Gittens's removal order became final in 2013, and he has been detained since May 16, 2025, the presumption of reasonableness of his detention no longer applies. *See Shengelia v. Ortega*, 5:25-CV-1545, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025).

Gittens provides good reason to believe that there is no significant likelihood of his removal in the foreseeable future.  His Barbados citizenship was renounced in 2013, and Gittens alleges that his efforts to obtain removal documents have failed. He asserts that Barbados and the United Kingdom have refused to accept him.  There is no evidence that any third country has been identified or contacted to effectuate Gittens's removal.

---

[5] To the extent the Government implicitly relies on Gittens's renunciation of citizenship, that took place well over 10 years ago, after Gittens was released on supervision.

[6] The Government did not provide a copy of the Order of Supervision.

The burden shifts to the Government to provide evidence of a significant likelihood that Gittens will be deported in the reasonably foreseeable future. The Government provides no evidence to rebut Gittens's claim. It merely relies on an unsigned document, which was already addressed. The Government provides no testimony regarding efforts to obtain travel documents.

### III.  Conclusion

Because Gittens's detention is unlawful, IT IS RECOMMENDED that the Petition be GRANTED, and Gittens be RELEASED under the same conditions with which he complied for 12 years.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Tuesday, April 21, 2026.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE